**WONG KAY SUEY, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al., Appellees.**

**WONG POO SING, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al., Appellees.**

**Emily WONG, Appellant,**

v.

**Herbert BROWNELL, Jr., Attorney General of the United States, et al., Appellees.**

Nos. 12092–12094.

United States Court of Appeals District of Columbia Circuit.

Argued April 20, 1955.

Decided Oct. 13, 1955.

---

2. In this respect we disagree with Heikkila v. Barber, 9 Cir., 216 F.2d 497, certiorari denied 349 U.S. 927, 75 S.Ct. 769.

Mr. Charles R. Richey, Washington, D. C., for appellants.

Mr. Lewis Carroll, Asst. U. S. Atty., with whom Mr. Leo A. Rover, U. S. Atty., Miss Catherine B. Kelly, Asst. U. S. Atty., and Mr. Albert E. Reitzel, Asst. Gen. Counsel, Immigration and Naturalization Service, were on the brief, for appellees.

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

EDGERTON, Circuit Judge.

These are exclusion cases that have been consolidated. The plaintiffs arrived in the United States in August or October, 1952. They claimed and were denied admission as citizens of the United States. Section 503 of the Nationality Act of 1940, 54 Stat. 1171, 8 U.S.C. (1946 ed.) § 903, provides that "if any person who claims a right or privilege as a national of the United States is denied such right or privilege * * such person, regardless of whether he is within the United States or abroad, may institute an action * * * for a judgment declaring him to be a national of the United States * * *."

In 1954 the plaintiffs filed separate complaints for judgments declaring them to be citizens of the United States, and asked that the defendants be restrained from interfering with their rights as citizens. In each case the District Court denied a preliminary injunction on the ground that it was "without jurisdiction to hear plaintiff's complaint for declaratory judgment." These appeals followed.

In December, 1952, the Immigration and Nationality Act of 1952, 66 Stat. 163, 8 U.S.C.A. § 1101 et seq., had become effective. Section 403(a) (42), 66 Stat. 280, repeals the Nationality Act of 1940. Section 360(a) of the Act of 1952 provides in effect that if any person "who is within the United States" claims a right as a national of the United States, and the right is denied upon the ground that he is not a national, he may institute an action for a declaratory judgment, "except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this or any other act,' or (2) is in issue in any such exclusion proceeding." 66 Stat. 273, 8 U.S.C. § 1503(a).

The question is whether the 1952 Act deprived the plaintiffs of their right under the 1940 Act to have the issue of their citizenship, which had arisen in exclusion proceedings, decided in actions for declaratory judgments. We think not.

The question turns upon the savings clause of the 1952 Act. That clause, § 405(a), provides that "Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect * * * any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. * * *" 66 Stat. 280, 8 U.S.C. p. 734 [8 U.S.C.A. § 1101 note].

The general language in this savings clause is broad enough to cover the plaintiffs' rights, under the 1940 Act, to sue for declaratory judgments. It may be said that the only "rights" directly referred to in the savings clause

are rights "in process of acquisition." But we think this phrase was intended to have a broadening rather than a narrowing effect. Congress can hardly have intended to preserve *only* rights "in process of acquisition" and cut off rights fully acquired. Moreover, the savings clause is to be liberally interpreted. "The whole development of this general savings clause * * * manifests a well-established congressional policy not to strip aliens of advantages gained under prior laws. The consistent broadening of the savings provision, particularly in its general terminology, indicates that this policy of preservation was intended to apply to matters both within and without the specific contemplation of Congress." United States v. Menasche, 348 U.S. 528, 535, 75 S.Ct. 513, 518.

The general language in this savings clause operates "unless otherwise specifically provided" in the Act. This exception does not cover this case. Nowhere in the 1952 Act is it "specifically provided" that if the issue of citizenship has arisen in an exclusion proceeding, a right already accrued under the 1940 Act, to have the issue decided in an action for a declaratory judgment, shall be cut off.

Considered by itself, and apart from the fact that the savings clause is to be liberally interpreted, the reference in § 360(a) of the Act to exclusion proceedings under "this or any other act" might perhaps seem to bring the case within the words "otherwise specifically provided." But specificity is a matter of degree. What may be relatively specific in one context may not be so in another. At several points in the 1952 Act, exceptions to the general principle of the savings clause are so specifically expressed as to make § 360(a) seem, by comparison, to fall far short of "specifically" providing an exception. For example, § 241(d), 66 Stat. 208, 8 U.S.C.A. § 1251(d), enacts that "the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated [as deportable] in subsection (a), notwithstanding * * * that the facts, by reason of

which any such alien belongs to any of of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act." Section 360(a), on the other hand, merely refers in general terms to an exclusion proceeding under "this or any other act" and does *not* add: "notwithstanding that the exclusion proceeding occurred prior to the enactment of this Act." Section 313(a), 66 Stat. 240, 8 U.S.C.A. § 1424(a), enacts that "Notwithstanding the provisions of section 405(b) [a savings clause regarding petitions for naturalization] no person shall hereafter be naturalized as a citizen of the United States—(1) who advocates or teaches * * * opposition to all organized government * * *."; and § 318, 66 Stat. 244, 8 U.S.C.A. § 1429, provides that "Notwithstanding the provisions of section 405(b) * * * no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest * * *." Section 360(a), on the other hand, does *not* enact that no action for a declaratory judgment may be instituted "notwithstanding the provisions of section 405(a) * * *." Section 360(a) does not mention § 405(a).

■■ We take § 360(a) to mean that no right to have the issue of citizenship determined in a suit for a declaratory judgment shall arise in the future, if the issue of citizenship arose in connection with exclusion proceedings. In view of the savings clause, we do not take § 360(a) to mean that an existing right to sue for a declaratory judgment shall be cut off.

Our view of the case makes it unnecessary to decide whether the plaintiffs are "within the United States" in the sense in which § 360(a) uses that term. Unless they are, the section does not apply to them at all. Even if they are, it does not bar their present suits.

We think the District Court erred in holding that it lacked jurisdiction.

Reversed.